*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM SHERMAN, CHRISTOPHER WELLIN,
and FAIRWAYS AT HARBOR SHORES
ASSOCIATION,

FOR PUBLICATION
June 18, 2020
9:05 a.m.

Plaintiffs-Appellants,

v

No. 348333
Berrien Circuit Court
LC No. 18-000141-CH

CITY OF ST. JOSEPH and CITY OF BENTON
HARBOR,

Defendants-Appellees.

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

SWARTZLE, J.

The individual plaintiffs in this lawsuit vote in St. Joseph elections but are subject to Benton Harbor taxes. This unusual arrangement is a temporary one and arises under defendants' conditional transfer of property agreement. Plaintiffs do not take issue with their rights to vote in St. Joseph elections, but they do contend that, because they cannot vote in Benton Harbor elections, they cannot be subject to Benton Harbor taxes. We conclude otherwise and hold that defendants' agreement is consistent with Michigan's conditional transfer of property law, and the agreement does not otherwise violate the state's tax or election law. For these reasons and as more fully explained below, we affirm summary disposition in favor of defendants.

## I. BACKGROUND

This case involves an agreement under the Intergovernmental Conditional Transfer of Property by Contract Act, MCL 124.21 *et seq*. Because the statute was first enacted through 1984 PA 425, intergovernmental agreements under its authority are commonly referred to as "Act 425" agreements. The underlying purpose of an Act 425 agreement is to enable a local unit of government to facilitate an economic development project. See MCL 124.22(1); MCL 124.21(a).

In 2005, the cities of St. Joseph and Benton Harbor entered into an Act 425 agreement in which they agreed to the conditional transfer of property located within the boundaries of St. Joseph to Benton Harbor for a period of 20 years. According to St. Joseph and Benton Harbor,

the conditionally transferred property was principally composed of former industrial sites with environmental contamination, and the agreement was intended to allow the property to qualify for economic incentives, such as those available under the Brownfield Redevelopment Financing Act, MCL 125.2651 *et seq*., to facilitate the property's redevelopment for residential and commercial purposes.

Under the terms of the Act 425 agreement, the zoning ordinance of St. Joseph continued to apply to the conditionally transferred property, and St. Joseph continued to provide municipal services, e.g., water, sanitary sewer, law enforcement, fire protection, fire-code administration and enforcement, construction-code administration and enforcement, and property-maintenance-code enforcement, to the property. Furthermore, the agreement provided that the conditionally transferred property would be treated as-if it were within the jurisdictional limits of St. Joseph for the purpose of applying and enforcing all ordinances, rules, and regulations. Any residents of the conditionally transferred property would be "considered residents of both Benton Harbor and St. Joseph for purposes of library and park privileges in either community."

The current dispute centers on provisions of the agreement addressing taxation and voting. Under the agreement, individuals residing on the conditionally transferred property were entitled to continue voting in St. Joseph, but were required to pay taxes to Benton Harbor for the duration of the agreement. Specifically, the agreement provides in relevant part:

> 2.2    Effect of Transfer. Except as otherwise specifically provided in this Agreement, the Conditionally Transferred Property shall, for all purposes, be within the jurisdiction of Benton Harbor and St. Joseph shall have no further jurisdiction over that property.

> * * *

> (d)    Taxes. For the purposes of all taxation, including, without limitation, *ad valorem* real and personal property taxes, income taxes, hotel/motel tax, etc., the Conditionally Transferred Property shall be considered as being within the jurisdictional limits of Benton Harbor. . . .

> * * *

> (f)    Voting. Any persons residing on the Conditionally Transferred Property shall be entitled to vote on the same basis as all other persons residing within the legal limits of St. Joseph. The parties recognize that because at the termination of this Agreement, the Conditionally Transferred Property will once again lie within St. Joseph's jurisdictional limits, the long-term interests of those registered electors who may reside on the Conditionally Transferred Property will likely be to have input into St. Joseph electoral matters. In addition, St. Joseph will be adopting, implementing and enforcing the ordinances and policies, including utility policies, affecting the Conditionally Transferred Property during the term of this Agreement. The parties therefore determined that, on balance, the interests of those registered electors who may reside on the Conditionally Transferred Property are more likely advanced by providing they are electors in St. Joseph during the

term of this Agreement. If a court of competent jurisdiction determines that the voting rights of the registered electors residing on the Conditionally Transferred Property should be different than as provided in this provision, this provision shall be revised in accordance with such court's opinion and order and the order and the remainder of this Agreement shall be unaffected by such court's determination.

The agreement further contains detailed provisions regarding the sharing of revenues between the local units of government, including *ad valorem* property taxes, state and federal revenue sharing, and Act 51 funds.

After the agreement went into effect, a site-condominium project was developed on the conditionally transferred property. Plaintiffs Sherman and Wellin purchased parcels on the property, and plaintiff Fairways at Harbor Shores Association was created as the homeowners' association affiliated with the site-condominium project, including plaintiffs' parcels.

In 2017, Benton Harbor placed a tax initiative on the ballot for approval by the registered electors of the city. Under the Act 425 agreement, plaintiffs could not vote on the income-tax question because they were deemed electors of St. Joseph, not Benton Harbor, and yet, they would be subject to any approved tax because they were deemed residents of Benton Harbor for purposes of taxation. The Benton Harbor electors approved the income-tax question by a narrow margin. Accordingly, beginning in January 2018, Benton Harbor's income tax requires businesses and residents (including the individual plaintiffs) to pay a 1% tax on their income.

Plaintiffs sued six months after the income tax became effective. They contend that they are not subject to the income tax because the provisions of the Act 425 agreement that split their voting and taxing rights violated the City Income Tax Act (CITA), MCL 141.501 *et seq.* In essence, because they were not permitted to vote on the income-tax question, they are not required to pay income tax to Benton Harbor, according to plaintiffs. The trial court granted summary disposition in favor of defendants, and this appeal followed.

## II. ANALYSIS

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Clam Lake Twp v Dep't of Licensing and Regulatory Affairs*, 500 Mich 362, 372; 902 NW2d 293 (2017). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. Furthermore, statutory interpretation is a question of law, which we also review de novo. *Id*. at 372-373.

As an initial matter, plaintiffs argue that the trial court erred because it granted summary disposition to defendants on the grounds that plaintiffs waived their claim. Our review of the record indicates that the trial court's grant of summary disposition to defendants was not based on waiver. The trial court's statements regarding any delay in the filing of this lawsuit or dilatory conduct by plaintiffs were merely dicta. Therefore, plaintiffs are not entitled to relief on this ground.

Moving to plaintiffs' primary argument, they maintain that the provisions in the Act 425 agreement regarding taxing and voting violate the CITA. They adamantly assert that they are not

making a constitutional claim, but rather a statutory one, i.e., a violation of the CITA. Relatedly, plaintiffs do not challenge the results of the election. Accordingly, we focus on the language found in Act 425, the CITA, and the relevant provisions of the Act 425 Agreement, and we do not consider any constitutional claim or challenge to the election.

Act 425 provides that two or more local units of government "may conditionally transfer property for a period of not more than 50 years for the purpose of an economic development project." MCL 124.22(1). This conditional transfer of property "shall be controlled by a written contract agreed to by the affected local units." *Id.* A contract under this act must provide, at a minimum, for the following:

> (a) The length of the contract.
>
> (b) Specific authorization for the sharing of taxes and any other revenues designated by the local units. The manner and extent to which the taxes and other revenues are shared shall be specifically provided for in the contract.
>
> (c) Methods by which a participating local unit may enforce the contract including, but not limited to, return of the transferred area to the local unit from which the area was transferred before the expiration date of the contract.
>
> (d) Which local unit has jurisdiction over the transferred area upon the expiration, termination, or nonrenewal of the contract. [MCL 124.27.]

Additional provisions may be set forth in the agreement, including "[a]ny other necessary and proper matters agreed upon by the participating local units." MCL 124.26(g). "Unless the contract specifically provides otherwise," the conditionally transferred property "is, for the term of the contract and for all purposes, under the jurisdiction of the local unit to which the property is transferred." MCL 124.28.

As for the CITA, it provides in pertinent part:

> Beginning January 1, 1995, a city shall not impose an excise tax on income under this act unless at least 1 of the following applies:
>
> * * *
>
> (b) The imposition of an excise tax on income under this act is approved by the qualified and registered electors of the city. [MCL 141.502a.]

Plaintiffs contend that the meaning of "qualified and registered electors of the city" in the CITA is further informed by section 492 of the Michigan Election Law, which provides:

> Each individual who has the following qualifications of an elector is entitled to register as an elector in the township or city in which he or she resides. The individual must be a citizen of the United States; not less than 17-1/2 years of age; a resident of this state; and a resident of the township or city. [MCL 168.492.]

-4-

With these statutory provisions in hand, plaintiffs make a four-fold argument. First, under Act 425, they were residents of Benton Harbor because the property was conditionally transferred to that city. Second, it follows therefore that they were entitled to be registered electors of Benton Harbor under Michigan election law. Third, a tax cannot be imposed under the CITA unless approved by the qualified and registered electors of Benton Harbor. Fourth, plaintiffs were precluded under the Act 425 Agreement from voting in Benton Harbor elections. Therefore, because they were entitled to be registered electors of Benton Harbor, but they were excluded from voting in that city's elections, forcing plaintiffs to pay the 1% residential income tax would violate the CITA because the tax was not approved by all of the qualified and registered electors of Benton Harbor. Put simply, no right to vote in Benton Harbor, no application of 1% tax on their income, under plaintiffs' reading of the relevant statutes and agreement.

While creative, we reject this reading. Act 425 authorizes local units of government to transfer property conditionally, by contract, for the purpose of an economic development project. MCL 124.22(1). The statute provides that an agreement between local units of government may address "[a]ny other necessary and proper matters agreed upon by the participating local units." MCL 124.26(g). The statute further states, "Unless the contract specifically *provides otherwise*," the conditionally transferred property "is, for the term of the contract and for all purposes, under the jurisdiction of the local unit to which the property is transferred." MCL 124.28 (emphasis added). Here, although the property was conditionally transferred from St. Joseph to Benton Harbor (and, ordinarily, residents of the property would have been able to vote in the latter's elections during the duration of an agreement), the Act 425 agreement here "*provides otherwise*" with respect to voting rights. As recounted earlier, the agreement specifically provides that the conditionally transferred property remains under the jurisdiction of St. Joseph, not Benton Harbor, for purposes of voting rights. This provision in the agreement that "provides otherwise" is precisely the type of circumstance envisioned under Act 425.

As for the CITA, plaintiffs do not argue that the election results were generally invalid or unconstitutional, nor do they argue that the "qualified and registered electors of" Benton Harbor failed to approve the tax. MCL 141.502a. Plaintiffs do not even argue that the outcome of the election would have been different if they had been permitted to vote in it. Rather, their argument is simply that, because they were not permitted to vote on the tax, they cannot be forced to pay the tax. While not without rhetorical force, the argument lacks legal persuasion. Under the CITA, the application of a tax to an individual is not conditioned on whether that individual had the opportunity to vote on the tax—it is, rather, whether the tax was approved by the qualified and registered electors of the city. MCL 141.502a. And it is uncontested that Benton Harbor's 1% income tax on residents was so approved.

## III. CONCLUSION

Plaintiff taxpayers purchased their property long after defendants executed the Act 425 agreement at issue here. Plaintiffs were on plain notice that, if they purchased the subject property and chose to live there, they would not be able to vote in Benton Harbor elections, but they would be subject to any tax on residents approved by that city. Plaintiffs have received the benefits that flowed from the Act 425 agreement (e.g., water, sewer, law-enforcement, and fire-protection services), and they have been able to vote in St. Joseph elections under the premise that their long-term interests will be better served by voting in the community to which they will return when the

-5-

agreement expires.  Act 425 contemplates these types of trade-offs, and the specific trade-off here—vote in St. Joseph but subject to Benton Harbor taxes—does not violate Act 425, the CITA, or Michigan election law.  In sum, having received the benefits under the Act 425 Agreement, plaintiffs cannot avoid the lawful obligations clearly spelled out in that agreement.

Affirmed.  Defendants, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood